UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| TRADING TECHNOLOGIES, INTERNATIONAL, INC., <br><br> Plaintiff, <br><br> v. <br><br> GL CONSULTANTS, INC., *et al.*, <br><br> Defendants. | Case Nos. 05 C 4120, 05 C 5164 <br><br> Magistrate Judge Sidney I. Schenkier |
| TRADING TECHNOLOGIES, INTERNATIONAL, INC., <br><br> Plaintiff, <br><br> v. <br><br> FUTUREPATH TRADING, LLC, <br><br> Defendant. | |

## MEMORANDUM OPINION AND ORDER

Beginning in 2004, Plaintiff Trading Technologies International, Inc. ("TT") brought a number of separate patent infringement suits against various defendants alleging infringement of U.S. Patent Nos. 6,766,304 ('304 Patent) and 6,882,132 ('132 Patent), which relate to certain computer software used for electronic trading in the futures industry.[1] Defendants in the above consolidated actions have moved for a modification of the protective order signed by Judge James Moran on August 7, 2006 ("2006 Order") (doc. # 284: Mot. to Modify). Judge Moran signed the

---

[1]This general background information has been gleaned from various opinions written in these cases, including, for example, *Rosenthal Collins Group, LLC v. Trading Technologies Int'l, Inc.*, No. 05 C 4088, 2009 WL 3055381 (N.D. Ill. Sept. 18, 2009); and *Trading Technologies Int'l, Inc. v. CQG, Inc.*, No. 05 C 4811, 2009 WL 398152 (N.D. Ill. Feb. 17, 2009).

2006 Order after the parties spent "an inordinate amount of time" and "massive briefing" on the protective order issues (doc. # 120, 7/13/2006 Mem. Op. and Order at 1), and the parties in this case have now spent a massive amount of time and briefing on issues related to modifying the protective order.

Defendants propose to modify the 2006 Order in the following ways: (1) to preclude TT's in-house counsel and Executive Vice President of Intellectual Property, Steven Borsand, from having access to any information defendants designate "Highly Confidential"; (2) to broaden the definition of "Primary Responsibility for the Preparation and Prosecution of Patent Applications"; (3) to broaden the definition of "Related to the Subject Matter of the Patents-In-Suit"; and (4) to create a fourth tier of confidentiality (in addition to "Confidential," "Highly Confidential - Attorneys' Eyes Only," and "Highly Confidential - Patent Prosecution") for source code, "Highly Confidential - Attorneys' Eyes Only - Source Code," which would establish numerous additional restrictions on a party's ability to review source code information. TT contends that the 2006 Order should remain in effect as it is, without any modification.

After careful review of all of the parties' submissions, we deny defendants' motion to modify the protective order.

### I.

Under Federal Rule of Civil Procedure 26(c)(1), "[t]he court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). Although the Federal Circuit generally defers to regional circuit law when the issue involves an interpretation of the Federal Rules of Civil Procedure, Federal Circuit law applies to discovery matters "if the determination implicates an issue of substantive patent law."

*In re Deutsche Bank Trust Co. Americas*, 605 F.3d 1373, 1377 (Fed. Cir. 2010). In deciding which law to apply, the Federal Circuit considers "the uniformity in regional circuit law, the need to promote uniformity in the outcome of patent litigation, and the nature of the legal issue involved." *Id.* at 1377. In *Deutsche Bank*, the Federal Circuit held that a "determination of whether a trial lawyer should be denied access to information under a protective order because of his additional role in patent prosecution, or alternatively be barred from representing clients in certain matters before the U.S. Patent and Trademark Office ("PTO"), is an issue unique to patent law." *Id.* As defendants' motion to amend implicates this very issue, under *Deutsche Bank* we apply Federal Circuit law in deciding the motion. *Id.* at 1377-78.

Defendants, the moving party, carry the burden of showing good cause for modification of the protective order. *Deutsche Bank*, 605 F.3d at 1378. The district court has broad discretion to decide when a protective order is appropriate and what degree of protection is required. *County Materials Corp. v. Allan Block Corp.*, 502 F.3d 730, 739 (7th Cir. 2007) (citing *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984)).

"Good cause 'is difficult to define in absolute terms, it generally signifies a sound basis or legitimate need to take judicial action.'" *Wiggins v. Burge*, 173 F.R.D. 226, 229 (N.D. Ill. 1997) (quoting *In re Alexander Grant & Co. Litig.*, 820 F.2d 352, 356 (11th Cir. 1987)). "Good cause is established by showing that the disclosure will cause a clearly defined and serious injury." *Hobley v. Chicago Police Commander Burge*, 225 F.R.D. 221, 224 (N.D. Ill. 2004). To establish good case under Rule 26(c), the moving party must present a "particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements." *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 102 n. 16 (1981); *see also Baxter Int'l, Inc. v. Abbott Labs.*, 297 F.3d 544, 548 (7th Cir. 2002)

(motion to maintain documents under seal must be made with specificity, analyzing in detail, document by document, the propriety of secrecy, providing reasons and legal citations).

"In considering whether good cause exists for a protective order, the federal courts have generally adopted a balancing process." *Grove Fresh Distributors, Inc. v. John Labatt Ltd.*, 888 F. Supp. 1427, 1443-44 (N.D. Ill. 1995). This test balances the privacy interests and potential harm to the party seeking the protective order with the importance of disclosure to the public. *Wiggins*, 173 F.R.D. at 229; *see also Bond v. Utreras*, 585 F.3d 1061, 1074 (7th Cir. 2009). In considering motions to modify confidentiality orders, the Third Circuit has suggested adding to the balancing test the consideration of the extent the parties relied on the original confidentiality order. *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 789-91 (3d Cir. 1994). While the Seventh Circuit has not set forth a specific test to follow in considering whether to grant a motion to vacate or modify a protective order, at least some judges in this district have adopted such a test. In *Murata Mfg. Co., Ltd. v. Bel Fuse, Inc.*, 234 F.R.D. 175, 179 (N.D. Ill. 2006), the court adopted the following four factors to consider: "(1) the nature of the protective order; (2) the foreseeability, at the time of issuance of the order, of the modification requested; (3) the parties' reliance on the order; and most significantly (4) whether good cause exists for the modification." *Id.* (citing *Bayer AG and Miles, Inc. v. Barr Labs., Inc.* 162 F.R.D. 456, 462-63 (S.D.N.Y. 1995)). "'Good cause' in this context implies changed circumstances or new situations; a continuing objection to the terms of a protective order does not constitute good cause to modify or withdraw it." *Kyles v. J.K. Guardian Sec. Servs.*, 2006 WL 2349238, at *4 (N.D. Ill. Aug. 15, 2006).

In patent cases, the test for modification of a protective order asks "whether there is an unacceptable risk of or opportunity for 'inadvertent disclosure' of confidential information." *Pfizer*

*Inc. v. Apotex Inc.*, No. 08-7231, 2010 WL 3937916, at *2 (N.D. Ill. Sept. 29, 2010) (citing *Autotech Techs. Ltd. Psp. v. Automationdirect.com, Inc.*, 237 F.R.D. 405, 407 (N.D. Ill. 2006) (quoting *Matsushita Elec. Indus. Co., Ltd. v. United States*, 929 F.2d 1577, 1579 (Fed. Cir. 1991)). If such a risk exists, the balancing test then involves weighing that risk against the burden that would be placed on the party seeking the information if it were denied material necessary to its defenses or claims. *Pfizer*, 2010 WL 3937916, at *2. In making this determination, the court must "examine all relevant facts surrounding counsel's actual preparation and prosecution activities, on a counsel-by-counsel basis." *Deutsche Bank*, 605 F.3d at 1380.

## II.

Defendants' first proposed modification to the protective order seeks to exclude Mr. Borsand from viewing all documents defendants designate as "Highly Confidential - Attorneys' Eyes Only," "Highly Confidential - Patent Prosecution," or "Highly Confidential – Attorneys' Eyes Only – Source Code" (a new category proposed by defendants). The 2006 Order allows "confidential" and "Highly Confidential - Attorneys' Eyes Only" information to be disclosed to TT's in-house attorney, Mr. Borsand, and to in-house attorneys for the defendants (doc. #286: Defs.' Mem. in Supp. of Mot. to Amend, Ex. 1: 2006 Order at ¶ 6). In addition, the 2006 Order stated that a party receiving "Highly Confidential - Patent Prosecution" information may disclose it to Mr. Borsand and other designated in-house attorneys "provided that they agree not to have primary responsibility for preparation and prosecution of patent applications . . . related to the subject matter of the patents-in-suit" (*Id.* at ¶ 8).

Defendants argue that Mr. Borsand is intimately involved in TT's patent prosecution, is responsible for managing TT's intellectual property assets and litigation, and is an "active inventor"

in connection with the type of technology at issue in this litigation (Defs.' Mem. at 5-7). Defendants contend that Mr. Borsand's involvement in these activities creates an unacceptable risk that if he were allowed access to the various species of Highly Confidential information, Mr. Borsand – despite his best efforts to avoid doing so – would inadvertently use the information to defendants' competitive detriment (*Id.* at 12-13). As a result, defendants contend that the 2006 Order should be modified to bar Mr. Borsand from viewing all "Highly Confidential" information (Defs.' Mem., Ex. 3: Proposed Order at ¶¶ 6(b), 7, 8).

The Federal Circuit recently explained that the risk of inadvertent disclosure turns on "the extent to which counsel is involved in competitive decisionmaking with its client." *Deutsche Bank*, 605 F.3d at 1378. The Federal Circuit defines "competitive decisionmaking" as "shorthand for a counsel's activities, association, and relationship with a client that are such as to involve counsel's advice and participation in any or all of the client's decisions . . . made in light of similar or corresponding information about a competitor." *Id.* These decisions include decisions on pricing, product design, and other unspecified areas. *Id.* at 1378-79 (citing *U.S. Steel Corp. v. United States*, 730 F.2d 1465 (Fed. Cir. 1984)).

The Federal Circuit observed that the concern over inadvertent disclosure manifests itself in patent infringement cases when trial counsel represents the same client in patent prosecution matters. *Deutsche Bank*, 605 F.3d at 1379. Nevertheless, the court held that because patent prosecution can encompass a range of activities, not every patent prosecution attorney is necessarily involved in competitive decisionmaking, and conversely, not every attorney involved in competitive decisionmaking does patent prosecution. "The facts, not the category must inform the result." *Id.*

Therefore, in determining the proper scope of a protective order, a court must consider, on a counsel-by-counsel basis, "whether an unacceptable opportunity for inadvertent disclosure" by the opposing party's attorney to his or her client – the competitor corporation – exists. *Deutsche Bank*, 605 F.3d at 1378. If it is determined that a risk of inadvertent disclosure exists, the court then "must balance the risk against the potential harm to the opposing party from restrictions imposed on that party's right to have the benefit of counsel of its choice." *Id.* at 1380. We apply that two-step approach in considering defendants' proposal to bar Mr. Borsand from access to information that defendants designate as Highly Confidential.

### A.

We begin by considering Mr. Borsand's role at TT. As the Executive Vice President of Intellectual Property for TT, Mr. Borsand manages and actively participates in all of TT's litigation matters that relate to intellectual property, including TT's enforcement of the patents-in-suit (doc. # 302: TT Opp'n Br., Ex. C: Borsand Decl. at ¶¶ 1, 4). Mr. Borsand is "extensively involved in determining TT's legal strategy with respect to all substantive issues in the litigations," and is one of few attorneys "with an overarching understanding of TT's broad legal strategy across the various patents and defendants" (*Id.* at ¶ 4). He "provide[s] legal advice to the decision makers within TT regarding issues in the litigations" and is TT's lead litigation counsel in this case and in all of TT's pending patent litigation (*Id.* at ¶¶ 4-5). Further, Mr. Borsand is the "only attorney who represents TT in settlement and license negotiations" (*Id.* at ¶ 6).

However, Mr. Borsand does not make decisions "related to product pricing, sales, marketing design, or development" (Borsand Decl. at ¶ 13). According to Mr. Borsand, since mid-2004 (prior to the commencement of these lawsuits), his role in patent prosecution has been "minimal and only

7

at a high level" (*Id.* at ¶ 7). Indeed, Mr. Borsand says his current involvement in patent prosecution is even less than it was in 2005, when the protective order originally was entered in these cases (*Id.* at ¶ 9). He does not draft patent applications, office action responses, or amendments, and he has not reviewed a single TT patent application since the third quarter of 2004 (*Id.*). Mark Triplett, TT's Vice President of Patents who reports to Mr. Borsand, heads a group of five patent attorneys and a paralegal responsible for managing all of TT's patent prosecution matters (*Id.* at ¶¶ 8-9).

With respect to defendants' characterization of him as an inventor, Mr. Borsand acknowledges that since 2003 his name has appeared as an inventor on three continuation-in-part applications (Borsand Decl. at ¶ 11). However, Mr. Borsand states that all of those applications were spawned from applications filed in 2003 and added no new material (*Id.*). Mr. Borsand states that he has not had any involvement with inventing products since 2003, and since that time has not made any inventive contribution to the patents involved in the 2003 applications (*Id.* at ¶¶ 11-12).

Mr. Borsand states that he has viewed Highly Confidential – Attorneys' Eyes Only material in this case, and that at all times he has abided by the terms of the protective order (Borsand Decl. at ¶ 10). Defendants have not offered any evidence to the contrary. So far, in this and prior litigation, Mr. Borsand has elected not to view information designated Highly Confidential – Patent Prosecution (*Id.*). Nevertheless, Mr. Borsand maintains that if he chose to review that category of material, he would fully abide by the terms of the protective order and would not have "Primary Responsibility for the Preparation and Prosecution of Patent Application(s) Related to the Subject Matter of the Patents-in-Suit," and thus would not be in a position to use the information to defendants' competitive disadvantage (*Id.*).

The Federal Circuit has stated that there is little risk that attorneys involved "solely" in the following prosecution activities will inadvertently rely on or be influenced by information they may learn as trial counsel during the course of litigation: "reporting office actions or filing ancillary paperwork, such as sequence listings, formal drawings, or information disclosure statements;" "high-altitude oversight of patent prosecution, such as staffing projects or coordinating client meetings." *Deutsche Bank*, 605 F.3d at 1379-80. The Federal Circuit reasoned that in these functions, attorneys "have no significant role in crafting the content of patent applications or advising clients on the direction to take their portfolios." *Id.* at 1380. By contrast, the Federal Circuit has warned of a high risk of inadvertent disclosure for attorneys who were "more substantially engaged with prosecution," including: "obtaining disclosure materials for new inventions and inventions under development, investigating prior art relating to those inventions, making strategic decisions on the type and scope of patent protection that might be available or worth pursuing for such inventions, writing, reviewing, or approving new applications or continuations-in-part of applications to cover those inventions, or strategically amending or surrendering claim scope during prosecution." *Id.* The Federal Circuit has remarked that the level of risk of disclosure is a "closer question" in the case of a "senior level supervisor" who primarily serves as a liaison between prosecuting attorneys and clients. *Id.*

Based on this record, we conclude that Mr. Borsand's work – while not involving current inventive activity or direct involvement in patent prosecution activity – does present some level of risk of inadvertent disclosure, because Mr. Borsand "mak[es] strategic decisions on the type and scope of patent protection that might be available or worth pursuing" for TT's inventions, as defined in *Deutsche Bank*, 605 F.3d at 1380. Mr. Borsand has oversight responsibility over the department

responsible for patent prosecution activity, he is one of the most senior executives of TT, and he is the primary architect of TT's legal strategy to protect its intellectual property to prevent competitors from copying TT's innovations, including enforcement of the patents-in-suit (Borsand Decl. at ¶¶ 1, 3-4). The evidence persuades us that there is enough risk to warrant proceeding to the second step of the analysis.

### B.

When there is a risk of inadvertent disclosure, the court "must balance the risk against the potential harm to the opposing party from restrictions imposed on that party's right to have the benefit of counsel of its choice." *Deutsche Bank*, 605 F.3d at 1380. The subject matter covered by the bar must "reasonably reflect the risk presented by the disclosure of proprietary competitive information." *Id.* at 1381. Further, the court must determine, on a counsel-by-counsel basis, whether the potential injury to the nonmoving party from restrictions imposed on its choice of litigation and prosecution counsel outweighs the potential injury to the moving party caused by the inadvertent use of confidential information learned in litigation. *Id.*

A district court has broad discretion to balance these conflicting interests and decide what degree of protection is required. *Deutsche Bank*, 605 F.3d at 1380. In making this determination, the court should consider such things as the extent of the counsel's past history representing the client in patent prosecution matters, the client's reliance and dependence on that past history, and the potential difficulty the client might face if forced to rely on other counsel for the pending litigation or engage other counsel in patent prosecution matters. *Id.* at 1381. In addition, the court looks to factors such as the type and scope of the activities prohibited by the protective order bar, the duration of the bar, and the definition of the subject matter covered by the bar. *Id.* As the